## Succession of Ross.

An admission of the correctness of certain charges in the account of an executor, deliberate- ly made, after an examination of the account by one of the heirs of the deceased who had peculiar means of knowledge, while the account of the executor was before arbitrators, will be conclusive against the heir on a subsequent opposition to the account.
Where an executor is a legatee of the deceased, he will not be entitled to commissions on the property administered by him, unless the testator has formally declared his intention that he should have the legacy over and above his commissions.    C. C. 1679.

APPEAL by the executor from a judgment of the Court of Probates of New Orleans, *Bermudez*, J.

The judgment of the court was pronounced by

King, J.    *William Ross* died in the year 1832, in the city of New Orleans, where his succession was opened.    At his death he left a will, by which he de- vised his estate equally to his five children, *James, John, Robert, George,* and *Ann,* after making a few special bequests, and nominated his son *James,* and two other persons, his executors.    The persons thus named were duly qualified as executors, but the administration of the succession seems to have devolved ex- clusively upon *James Ross.*    An inventory of the effects of the succession was made, in which were included moveables estimated at $301.    The landed pro- perty and moveables appear to have been preserved, and administered in kind. On the 20th of June, 1835, *James Ross,* the executor, purchased of *John Ross,* his brother, the share of the latter in the succession of their father.    The exe- cutor continued to administer the succession, without rendering an account, until July, 1845, when *John* and *George Ross,* presented a petition to the Pro- bate Court, praying that he should be ruled to file a final account of his adminis- tration.    In compliance with this prayer, a tableau was presented by the execu-

17

tor, exhibiting a statement of the assets, and of the disbursements which he had made on account of the succession. To this tableau George and John filed an opposition, in which they objected specifically to several items upon both the debit and credit side. Upon the appearance of this opposition, the executor contested the right of John to oppose, on the ground that he was " a stranger to the succession," and moved orally to dismiss the opposition, alleging, as it appears, that John had previously disposed of his share. John Ross contended, also orally, that the sale was a nullity, having been made to his brother while the latter was executor, and as such prohibited by law from acquiring by purchase any part of the succession under his administration, either by public or private sale. Civil Code, arts. 1139, 1784.

Upon the issue thus informally presented, the probate judge proceeded to enquire into the character and validity of the act of sale from John Ross to the executor, received a large mass of testimony explanatory of the objects and intentions of the contracting parties, determined that the act was not a sale, but a mortgage to secure the reimbursement of the sum of $300, and maintained the right of John to oppose. From the judgments rendered upon this motion and upon the merits, the executor has appealed. We can not, under the pleadings and evidence presented in the record, proceed with propriety to determine what effect should be given to the act of sale. The question of its validity is not properly before us. The act is not referred to in the pleadings by either party ; its invalidity is not asserted ; no cause of nullity is alleged ; and the whole testimony in relation to it has been improperly and irregularly received. There has has been equal irregularity in the motion to dismiss the opposition of John Ross. It appears to have been made orally ; it was not even spread upon the minutes of the court as far as appears from the record, and we only learn that such a motion was entertained from casual references to it in the proceedings. In this condition of the pleadings and evidence, we can not adjudicate finally upon those rights of the parties which depend upon this act. It was not necessary that the Probate Court should have decided upon the character of the act, in order to maintain the right of John to oppose the executor's account. At the date of the transfer there was living another brother of the parties, Robert Ross, who subsequently died. It is not shown that he left forced heirs, or a will, or received his share of his father's estate, or divested himself of his interest while living. His surviving brother, John, must be presumed to have inherited from him, and consequently had an interest in the succession which authorised him to call upon the executor to account.

The first question presented by the opposition, relates to the rights of George Ross. From the evidence it appears that, in the commencement of this unhappy controversy, an ineffectual attempt was made to settle, by arbitration, the difficulties subsisting between George and the executor. At that time John disclaimed any interest or right whatever in the succession, and repeatedly declared that he had settled with his brother for his share. While the matter was thus pending before arbitrators, the executor presented a statement of the disbursements made on account of the succession. This was submitted to George, who acknowledged the correctness of most of the charges, but objected to several others, which, with the assent of the executor, were modified in accordance with his wishes. His admissions were made with deliberation, after a scrutiny of the account, and after having been advised by the arbitrators, "to be careful of his rights, and to admit nothing which was not just." They

were made too in reference to charges with regard to which, from the relations between the parties at the time that the disbursements were made, living, as they did under the same roof, he must have had a personal and competent knowledge. These admissions were properly in evidence before the court, and are conclusive in relation to all the items in reference to which they were made. As between *George Ross* and the executor, they must form the basis of settlement, and, with the remaining evidence, will enable us to determine finally upon the controversy between these parties. The admissions embrace all the charges in the executor's account for sums paid for the use of the succession, which have been opposed, with the exception of the item of commissions. This item must be rejected, the executor being a legatee of the deceased. The funeral expenses of *William Ross, Jr.*, although admitted to be correct, form no charge against the succession, his death having preceded that of the father, and must be stricken off. In other respects, that side of the account, as amended by the admissions of the opponent with the assent of the executor, must be homoligated as between these parties.

Two objections are made in the opposition to the account of assets. The first is, that the moveables have been converted by *James* to his own use, and were worth more than their appraised value upon the inventory. The second, that the whole rents received have not been accounted for.

In relation to the first of these items, the allegation is not supported by the evidence. The rents appear to us to have been accounted for at a fair rate, but have not been brought down to the day when the tableau was filed. The probate judge made the amendment in this respect, which was correct.

It next becomes necessary to consider the opposition of *John Ross*. He was present at the investigation of the account before the arbitrators, but asserting no interest in the succession, and not participating in the proceeding further than to advise with his brother *George*. when called upon, in relation to one or two of the charges objected to by the latter. He appears to have given no such assent to the correctness of the executor's account, as to conclude him from requiring strict proof of the items of which it is composed.

The principal evidence relied upon by the executor in support of his account and to resist the opposition, consisted, first, of the admissions of *George* made in the presence of *John*, which have already been considered; and secondly, of the sale from *John*, which he deemed conclusive against the latter. The fact that *John* had an interest in the succession of his father, as one of the heirs of a deceased brother, which had not been disposed of, and which authorized him to oppose the account, appears to have escaped the attention of both the court and the counsel upon the trial below. The consequence has been that but little other testimony was adduced in relation to the disbursements made on account of the succession. For the reasons already assigned we have declined to consider the transfer from *John* to the executor, which constituted the evidence mainly relied upon by the latter. This branch of the case is thus presented without sufficient testimony to enable us to decide upon the rights of the parties, and the deficiency of proofs cannot be strictly ascribed to the negligence of the executor. Justice, in our opinion, requires that the cause, as far as relates to the opposition of *John Ross*, should be remanded for further proceedings. While making this order, we cannot forbear expressing the hope that the remaining causes of controversy may be adjusted between the parties, without further recourse to courts of justice.

SUCCESSION OF
Ross.

It is therefore ordered and decreed that, the judgments appealed from be avoided and reversed. It is further ordered that, the account of assets of the succession of *William Ross*, deceased, presented by *James Ross*, the executor, be amended ·by adding to it the sum of $154 80, being for rents from the 1st of May, 1845, to the 1st of August of the same year; that the amount of debts paid by the executor be amended, by striking from it the charges of $75 for the funeral expenses of *William Ross, jr.*, and of $400 for commissions of the executor, and by reducing the following charges, viz : that of fencing, from $240 to $53 85; that for repairing a roof, &c., from $225 to $150; that for paving side-walks, from $1,115 52 to $1,085 30; that the tableau thus amended be homologated and confirmed, as far as relates to *George Ross*. It is further ordered that, as relates to the opposition of *John Ross*, the cause be remanded for further proceedings ; that the appellees pay the costs of this appeal, and that the appellant pay the costs of the court below..

*W. G. Kendall, G. W. Christy* and *T. H. Lewis*, for the appellant.   *Bonford*, contrâ.